**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**James BASTIN, Defendant–Appellant.**

**No. 94CA0920.**

Colorado Court of Appeals,
Div. III.

Jan. 25, 1996.

Rehearing Denied Feb. 22, 1996.

*Certiorari Denied May 31, 1996.*

---

Gale A. Norton, Attorney General, Stephen K. ErkenBrack, Chief Deputy Attorney General, Timothy M. Tymkovich, Solicitor General, Robert M. Petrusak, Senior Assistant Attorney General, Denver, for Plaintiff–Appellee.

Patrick J. Mulligan, Denver, Robert L. Ransome, Lakewood, for Defendant–Appellant.

Opinion by Judge BRIGGS.

Defendant, James Bastin, appeals the judgments of conviction entered on jury verdicts finding him guilty of first degree sexual assault, sexual assault on a child, and felony murder. He challenges the trial court's change in a jury instruction after closing arguments and the sufficiency of the evidence to support the underlying sexual assault convictions. We affirm.

A twelve-year-old girl was the victim of a violent sexual assault. She was then strangled to death, and her body was thrown into a dumpster, dowsed with gasoline, and set on fire.

At trial, numerous witnesses placed defendant with the victim in the hours before her death. Two witnesses testified that they were present when defendant put the victim's body into the dumpster.

Defendant's mother testified that defendant told her he was with the victim that evening. He claimed he had not sexually assaulted the victim. Rather, he had only engaged in "horseplay." However, he admitted to his mother that, while he had the victim in a headlock, he accidentally caused her death. He then placed the victim's body in his car and "panicked."

## I.

Defendant contends that the trial court's change in the wording of the felony murder instruction, made after closing argument, violated his constitutional rights to trial by a jury, to due process, and to present a defense because defense counsel had formulated his closing argument based on the instruction in its prior form. Under the circumstances presented here, we find no error.

Before closing arguments, the court read the instructions to the jury. The instruction on the charge of felony murder, to which neither party had objected, provided:

The elements of the crime of Felony Murder in the First Degree are:

1. That the defendant,

2. in the State of Colorado, at or about the date and place charged,

3. acting alone,

4. committed Sexual Assault in the First Degree, or Sexual Assault on a Child, and

5. in the course of or in furtherance of First Degree Sexual Assault or Sexual Assault on a Child, or in the immediate flight therefrom,

6. the death of a person, other than one of the participants, is caused by anyone.

The prosecutor and defense counsel then made closing arguments. In a portion of his argument, defense counsel made several references to the third listed element, "acting alone." For example, he argued: "[T]he prosecutor has to prove that [defendant] acted alone in order to convict him of felony murder, that's the law that the Judge gave you."

After closing arguments the court, outside the presence of the jury, stated to counsel:

I'm troubled by one of the instructions that we gave, and I'm particularly troubled, I suppose, by the argument that was made in regard to that instruction. And that dealt with the elements of the crime of felony murder[,] and specifically dealing with element number three.

This court, when we did the instruction phase, was given two alternate forms of ... this instruction. And the only difference, between the two, was paragraph three.... [O]ne of those alternates read, acting alone, and one of those read ... acting with one or more persons. There was no evidence ... of [defendant's] acting with one or more other persons. So the court rejected that, and took the one that said acting alone.

I think that that is in error. I think that the error of that is pointed out by the argument that was made by Defense Counsel ... who, on several occasions, indicated to the jury that the People must prove that the Defendant was acting alone[ ] before he can be found guilty of Felony Murder. And that simply is not the law in the State of Colorado....

[T]he argument was, in fact, wrong, and misleading, according to Colorado law, and I think that I have the responsibility of telling [the jury] what the correct Colorado law is.

Defense counsel objected to any change in the instructions given and, in the alternative, requested a mistrial. The court rejected the request for a mistrial but offered the attorneys ten minutes to make additional closing argument to the jury. Both declined.

The court called the jurors into the courtroom and advised them it was withdrawing the felony murder instruction because it did not accurately state the law. The court replaced the instruction with one stating as its third listed element: "acting alone or with one or more persons." The court then read that instruction and excused the jury to commence its deliberations.

■ The pattern jury instruction on this charge provides as its third element: "acting [alone] [with one or more persons]." *COL-JI–Crim.* No. 9:02 (1983). It is patterned after § 18–3–102(1)(b), C.R.S. (1995 Cum. Supp.), which provides that in the commission of felony murder, a person may be "[a]cting either alone or with one or more persons" in committing an enumerated felony. Thus, whether the accused acted alone or with others is not a true element of this offense. The statute merely makes clear that guilt results in either case. *Cf. People v. Scheer,* 184 Colo. 15, 518 P.2d 833 (1974). We therefore agree with the trial court that the initial instruction did not accurately reflect the law.

■ Crim.P. 30 provides that the instructions shall be read to the jury before closing arguments and that counsel may comment on the instructions during closing arguments. This procedure affords counsel the opportunity to structure closing arguments based on the instructions which will govern the jury's deliberations. *See United States v. Gaskins,* 849 F.2d 454 (9th Cir.1988)(discussing similar Fed.R.Crim.P. 30).

■ However, the trial court has a duty to instruct the jury properly on all of the elements of the offenses charged. *People v. Cowden,* 735 P.2d 199 (Colo.1987). Corre-

spondingly, it has a duty to correct erroneous instructions. *See* 3 ABA, *Standards for Criminal Justice,* Standard 15–4.3(c)(2d ed. 1982) ("The court may recall the [jurors] after they have retired and give them additional instructions in order ... to correct or withdraw an erroneous instruction...."). It likewise has a duty to correct misstatements of counsel that are sufficient to mislead the jury regarding the applicable law. *See Longinotti v. People,* 46 Colo. 173, 102 P. 165 (1909).

■ When circumstances require that a change in the instructions be made after closing arguments, reversible error occurs only if defense counsel was unfairly misled in formulating closing arguments or prevented from arguing a meritorious defense to the jury. *Cf. United States v. Gaskins, supra; United States v. Smith,* 629 F.2d 650 (10th Cir.1980), *cert. denied,* 449 U.S. 994, 101 S.Ct. 532, 66 L.Ed.2d 291 (1980).

Here, as the apparent result of an oversight or an initial misunderstanding by the trial court, the felony murder instruction read to the jury did not properly state the true elements of the crime. The error in the instruction did not become apparent until its ramifications were brought to the court's attention by defense counsel's argument.

■ The argument that the jury must acquit defendant of felony murder unless the prosecution proved defendant acted alone was not a meritorious defense and was not part of a good faith attempt to modify existing law. The existing and controlling law was not only clearly established, it was plainly set forth in the statute defining the crime. In such circumstances, at least when the specific legal argument has not been brought to the court's attention, counsel cannot claim to have been unfairly misled in formulating closing arguments. *See People v. Sepeda,* 196 Colo. 13, 581 P.2d 723 (1978); Rules of Professional Conduct 1.1 and 3.1; *see also* Rules of Professional Conduct 3.3(a)(3); *Fite v. Lee,* 11 Wash.App. 21, 521 P.2d 964 (1974); *People v. Schultheis,* 638 P.2d 8 (Colo.1981); *cf. Arellano v. People,* 177 Colo. 286, 493 P.2d 1362 (1972).

■ Furthermore, in his closing argument, defense counsel argued, as he had in opening argument and throughout the trial, that the lack of evidence linking defendant to the sexual assault and the questionable credibility of the prosecution's witnesses required that defendant be acquitted. Defense counsel made no concessions of fact in closing argument as a result of the erroneous instruction but merely added an additional legal argument. *Cf. United States v. Oliver*, 766 F.2d 252 (6th Cir.1985). And, defense counsel was given the option to provide further argument in light of the change in instructions to the jury and thereby minimize any conceivable prejudicial impact on the defense. *Cf. United States v. Gaskins, supra; United States v. Smith, supra.*

Under these circumstances, we conclude that defense counsel was not unfairly misled in formulating closing argument or unfairly prevented from arguing any meritorious defense. *See United States v. Smith, supra.* Hence, the change in instruction did not violate defendant's right to trial by a jury, to due process, or to present a defense, and the trial court's denial of defendant's motion for a mistrial on this basis was not an abuse of discretion. *See People v. Chastain*, 733 P.2d 1206 (Colo.1987).

## II.

Defendant also contends that the evidence presented was insufficient to support the underlying felony sexual assault convictions and therefore was insufficient to support the felony murder conviction, thus requiring that all of the convictions be reversed. We are not persuaded.

■ When the sufficiency of the evidence is challenged on appeal, our task is to determine whether the evidence, viewed as a whole, and in the light most favorable to the prosecution, is sufficient to support a conclusion by a reasonable person that the defendant is guilty of the crimes charged beyond a reasonable doubt. This standard therefore requires that the prosecution be given the benefit of any inferences fairly drawn from the evidence. And, the determination of the credibility of the witnesses remains solely within the province of the jury. *See Kogan v. People*, 756 P.2d 945 (Colo.1988).

■ Here, the prosecution lacked physical evidence linking defendant to the victim's sexual assault, such as fingerprints or body fluids, in part because of the severely burned condition of the victim's body. However, the prosecution did present physical evidence that the anal rape of the victim was extremely violent, leaving a tear in the rectal opening and several inches of contusions from the rectal opening deeper into the rectal tissue. From this evidence, the jury could reasonably have inferred that the victim would not have been engaging in "horseplay" with defendant at the time of her death and hence could reasonably have disbelieved that defendant had no involvement in the rape.

Furthermore, in addition to defendant's admission to his mother that he caused the victim's death, the prosecution presented the testimony of witnesses who had heard the victim say she was going to meet defendant that evening and had seen defendant with the victim at different times during the course of the evening. And, defense counsel conceded in closing argument that defendant was present at the dumpster when the victim's body was burned.

Viewing the evidence as a whole and in the light most favorable to the prosecution, reasonable jurors could find that the elements of the felony sexual assault and felony murder charges had been proven beyond a reasonable doubt. We therefore conclude that the evidence was sufficient to support defendant's convictions.

Judgment affirmed.

RULAND, J., concurs.

JONES, J., dissents.

Judge JONES dissenting.

I respectfully dissent. Under the circumstances here, I believe it was error for the trial court to substitute another instruction for that originally given the jury setting forth the elements of felony murder. Thus, I would reverse and remand for a new trial.

Prior to closing arguments, the court read the following instruction to the jury:

The elements of the crime of Felony Murder in the First Degree are:

1. That the defendant,

2. in the State of Colorado, at or about the date and place charged,

3. acting alone,

4. committed Sexual Assault in the First Degree, or Sexual Assault on a Child, and

5. in the course of or in furtherance of First Degree Sexual Assault or Sexual Assault on a Child, or in the immediate flight therefrom,

6. the death of a person, other than one of the participants, is caused by anyone.

Neither party objected to this instruction, and it was in accord with *COLJI–Crim* 9:02 (1993), which reflects that element three may, in the alternative, state that the defendant acted "alone" or that the defendant acted "with one or more persons."

After closing arguments were given, the jury was directed to begin deliberations with this admonition:

For the 12 people who are in the jury box, I am going to ask that you go back into the jury room. . . . We have most of the evidence already in the jury room for you. . . .

Please recall that once you get in there, the first thing that you do is select a foreperson amongst you. From that point on, how you handle your deliberations is up to you. You can do a voice vote, hand vote, written vote, whatever you feel comfortable. . . . [A]t 12:00 or so . . . we are going to be taking . . . you people out to lunch. . . . [W]hen you are at lunch you are not in deliberations so you must cease your deliberations during lunch.

The record reflects that the jury began "*deliberating* at the hour of 11:33 a.m." (emphasis added) Thus, contrary to the trial court's claim to the contrary, the jury deliberated, at minimum, from 11:33 a.m. until 12:00 noon, or 27 minutes, based on the evidence, the arguments of counsel, and the instructions of law given them by the court, including the initial felony murder instruction.

After the luncheon intermission, the court called counsel and the defendant into chambers and announced *sua sponte* that it was going to change the felony murder instruction because it was "troubled" by the third element of the instruction. After stating that the jury had not begun its deliberations, the trial court denied defense counsel's motion for mistrial, withdrew the original instruction, upon which both the prosecutor and defense counsel had relied, and presented to the jury a new instruction on felony murder. The new instruction contained a third element that stated: "acting alone or with one or more persons."

The accused in a criminal trial must be accorded the constitutional right to a fair trial by jury. *Duncan v. Louisiana*, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968); *People v. Boulies*, 690 P.2d 1253 (Colo.1984). It is a question of fact whether an essential element of an offense charged has been proven beyond a reasonable doubt, and the presiding judge may not usurp the jury's important function in this regard. *Morissette v. United States*, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952). A criminal defendant is entitled to accurate and understandable jury instructions as to the offenses charged against him. *People v. Cowden*, 735 P.2d 199 (Colo.1987).

Here, I agree, conceptually, with the majority that the felony murder statute, § 18–3–102(1)(b), C.R.S. (1995 Cum.Supp.), must be read to state that guilt results whether one acts alone or with one or more others. And, I agree with the trial court that the original instruction led to a situation that misled the jury. However, as the case at issue was tried, and in light of the original felony murder instruction given and the arguments of both parties based thereon, the issue, nevertheless, arises whether the defendant was prejudiced by the replacement instruction given after counsel had planned and presented closing arguments based on the original instruction. I believe he was and that, therefore, reversible error occurred.

First, it is useful to note that the "acting alone" scenario was established here as a strategic choice on the part of the prosecution. The prosecution was aware of the two

forms of instruction originally proposed by the court and affirmatively opted for the "acting alone" instruction. Undoubtedly, this was because that instruction was in concert with the evidence in the case which did not reveal any other actor but the defendant.

During both his initial and rebuttal closing arguments, the prosecutor referred extensively to the felony murder instruction, including the "acting alone" language. He also buttressed the actual use of that language with other arguments calculated to persuade the jurors that their reference to the instruction would not be in vain.

For instance, after actually reviewing the individual elements, he stated: "Jim Bastin [is] the *participant.* And [defendant] caused [the victim's] death while he was ... raping her." (emphasis added) He later argued that no evidence suggested "anyone was with [defendant] when he raped and strangled [the victim] to death."

The record reflects that the prosecution actually referred to the "acting alone" scenario as many times as the defense did, *i.e.,* approximately seven times, respectively. Under these circumstances, the jury, and the defense, were entitled to believe that that element needed to be a central focus of the defense.

Secondly, in light of the prosecution strategy and the instruction actually given, defense counsel had a duty to his client to argue the evidence and the law as given in the instructions. I disagree with the majority that such arguments were incompetent and reject the inference that they represent ethical or legal bad faith on the part of defense counsel or that the arguments were frivolous. Indeed, to have approached the arguments in any other way would have been a violation of counsel's duty to his client.

C.R.C.P. 30 requires that the instructions be read to the jury before closing arguments so that counsel may effectively plan and present their arguments. The rule also prohibits the court from commenting on the evidence. *See United States v. Gaskins,* 849 F.2d 454 (9th Cir.1988); *United States v. Oliver,* 766 F.2d 252 (6th Cir.1985)(commenting on Fed.R.Crim.P. 30).

I believe that, here, both counsel did no more than fairly argue the law presented to the jury in the instructions.

The trial court's decision to change the instruction during deliberations resulted in prejudice to the defendant that amounts to reversible error. When the court changed its instruction, after closing arguments and during deliberations, it was presenting law that rejected both the prosecution's and the defense's theories of the case. Those theories had been presented in closing arguments after the original instruction had been given and based, in strong part, on that instruction. *See United States v. Smith,* 629 F.2d 650 (10th Cir.1980); *Commonwealth v. Hendricks,* 546 A.2d 79, 376 Pa.Super. 381 (1988). By its actions, the court misled counsel, rendered closing arguments useless, and undoubtedly confused the jury. *See United States v. Gaskins, supra.*

I further believe that the trial court's offer to counsel of ten minutes additional argument during deliberations did not cure the prejudice to defendant. In my view, such a procedure, initially, amounted to the court commenting on the evidence and directing the jury on how to rule on the facts. Secondly, I believe the procedure was fraught with the potential to confuse the jury. Such confusion could not, in all probability, have been eliminated by ten more minutes of argument. Additionally, since the new instruction essentially vitiated defendant's defense premised on the original instruction, it placed defense counsel in an untenable position *vis-a-vis* further argument.

Thus, additional argument would not have eliminated the prejudice to defendant occasioned by the court's procedure here. *Cf. United States v. Gaskins, supra.*

An effective remedy, if the trial court truly deemed the original instruction erroneous, would have been to grant a mistrial. That would have enabled counsel to change their theories in reliance on the new instruction and would have eliminated the probability that the jury was confused by the procedure the court followed here.

The court's failure to grant a mistrial, based on its perception of having instructed

erroneously initially, left in place the probability that the court's procedure had so undermined the fundamental fairness of the trial as to cast doubt on the judgment of conviction.

Nor does the majority opinion's reliance on *People v. Chastain,* 733 P.2d 1206 (Colo. 1987), persuade to the contrary. In *Chastain,* the supreme court held that the trial court did not abuse its discretion in denying the defendant a mistrial because the grounds stated for mistrial were not "substantial and real." There, the trial court had held that the voluntary absence of a subpoenaed defense witness was not grounds for mistrial because the anticipated testimony of the witness was not material or essential to the defense. *People v. Chastain, supra.*

Here, the substantial difference in the law stated in the respective instructions is so conceptually apparent, based on how counsel had planned and presented their cases, that prejudice was most assuredly introduced by the change. The focus of the evidence was so completely changed by introduction of the second instruction that substantial and real grounds for mistrial were presented. These grounds were not addressed in any way by the trial court. Thus, I cannot conclude that "the effectiveness of counsel's argument and hence of appellant's defense was not impaired ..." by the trial court's substantial change by way of the new instruction. *United States v. Gaskin, supra,* 849 F.2d at 460.

For these reasons, I would reverse the judgments of conviction and remand for a new trial.