**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**June 19, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

       Plaintiff - Appellee,

v.

CARLOS BALDERAMA-IRIBE, also
known as Ildelfonso Siqueiros-Garcia,

       Defendant - Appellant.

No. 04-4316

---

**Appeal from the United States District Court**
**for the District of Utah**
**(D.C. No. 2:03-CR-997-01-DB)**

---

Submitted on the briefs:

Raymond P. Moore, Federal Public Defender and Vicki Mandell-King, Assistant
Federal Public Defender, Denver, Colorado, for Defendant-Appellant Carlos
Balderama-Iribe.

Paul M. Warner, United States Attorney, and Elizabethanne C. Stevens, Assistant
United States Attorney, Salt Lake City, Utah, for Plaintiff-Appellee United States
of America.

---

Before **HARTZ**, **EBEL** and **McCONNELL**, Circuit Judges.

---

**EBEL**, Circuit Judge.

---

In this direct criminal appeal, Defendant-Appellant Carlos Balderama-Iribe challenges his mandatory life sentence imposed for a drug trafficking conviction.[1] The district court enhanced this sentence to mandatory life imprisonment based upon Balderama-Iribe's two prior felony drug convictions. Although Balderama-Iribe concedes that the Government gave him proper notice, as required under 21 U.S.C. § 851(a)(1), that he was subject to such an enhanced sentence, he asserts that the prosecutor negated this notice when the prosecutor mistakenly indicated during a pretrial hearing that Balderama-Iribe was instead subject to only a statutory mandatory minimum twenty-year sentence. Having jurisdiction under 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291, we affirm Balderama-Iribe's mandatory life sentence.

## I. BACKGROUND

The United States indicted Balderama-Iribe, a Mexican citizen, on three counts: 1) possessing fifty grams or more of methamphetamine, with the intent to distribute, 2) distributing five grams or more of methamphetamine, both in violation of 18 U.S.C. § 2 and 21 U.S.C. §§ 812, 841(a)(1);[2] and 3) illegally

---

[1]We granted Balderama-Iribe's request for a decision on the briefs without oral argument. See Fed. R. App. P. 34(f) and 10th Cir. R. 34.1(G).

[2]21 U.S.C. § 841(a)(1) makes it "unlawful for any person knowingly and intentionally . . . to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance." 21 U.S.C. § 812 Schedule III(a)(3) makes methamphetamine a controlled substance. 18 U.S.C. § 2 further provides that "[w]hoever commits an offense against the United States or

(continued...)

reentering the United States after previously being deported, in violation of 8 U.S.C. § 1326.[3] Because Balderama-Iribe had two prior felony drug trafficking convictions, he was subject to a "mandatory term of life imprisonment without release" on the first count. See 21 U.S.C. § 841(b)(1)(A). The Government, therefore, filed an information pursuant to 21 U.S.C. § 851(a)(1) notifying Balderama-Iribe that, because of those two prior felony drug convictions, "he may be subject to increased punishment pursuant to 21 U.S.C. § 841(b)(1)(A)."

The Government filed this § 851 information on May 10, 2004. A month later, on June 16, 2004, the district court held a pretrial hearing. Plea

---

[2](...continued)
aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal," and "[w]hoever willfully causes an act to be done which, if directly performed by him or another would be an offense against the United States, is punishable as a principal."

[3]In pertinent part, 8 U.S.C. § 1326(a) provides for imprisonment for any alien who –

> (1) has been denied admission, excluded, deported, or removed or has departed the United States while an order of exclusion, deportation, or removal is outstanding, and thereafter
>
> (2) enters, attempts to enter, or is at any time found in, the United States, unless (A) prior to his reembarkation at a place outside the United States or his application for admission from foreign contiguous territory, the Attorney General has expressly consented to such alien's reapplying for admission or (B) with respect to an alien previously denied admission and removed, unless such alien shall establish that he was not required to obtain such advance consent under this chapter or any prior Act[.]

negotiations had been ongoing and the Government and the court expected that during this hearing Balderama-Iribe would enter a guilty plea. Balderama-Iribe, however, instead chose to proceed to trial. At the end of that pretrial hearing, after Balderama-Iribe had indicated that he would not plead guilty, the prosecutor stated:

> I have one other thing for the court and for the record, your Honor. According to the information that the government has, Mr. Balderama qualifies as a career offender under the sentencing guidelines and, therefore, under the guidelines would begin at a level 37, criminal history category six, and his guideline range at the present time, if we proceed to trial, is 360 months to life imprisonment. The government has filed, based on his prior offenses, drug trafficking offenses, and we have filed an 851 enhancement, your Honor, which subjects him to a 20 year minimum mandatory. However, obviously the [plea] agreement that the government has made and anticipated here today would have decreased his sentence from 360 months to, I believe, 262 months, and that was one of the reasons that [defense counsel] and I tried hard to have this agreement go through here today.

(Emphasis added.) While the prosecutor's calculation of the sentencing guideline range was accurate, he misstated that Balderama-Iribe was subject to a mandatory minimum twenty-year sentence instead of the mandatory life sentence referred to in the § 851 information.

At the conclusion of that hearing, the district court gave Balderama-Iribe an additional thirty days to consider the Government's plea offer, "to ponder the possibility that he could be facing 360 months to life if he is found guilty at a jury trial." During this thirty-day period, the Government sent defense counsel a letter

4

specifically reiterating that Balderama-Iribe faced a <u>mandatory</u> life sentence[4]:

> I am writing to memorialize our telephone conversation of this morning in which I informed you that your client would be facing a mandatory life sentence if he is convicted at trial. As I indicated, under 21 U.S.C. § 841(b)(1)(A), life imprisonment is mandatory if a defendant has two prior drug felony convictions which have been alleged in an information filed under 21 U.S.C. § 851.

Ultimately, Balderama-Iribe declined to enter into a plea agreement. Instead, he

---

[4]The Government requests that this court permit it to supplement the appellate record with the letter. Because the letter was not submitted to the district court, however, the appellate rules ordinarily do not permit us to include it now in the record on appeal. <u>See</u> <u>Shooting Star Ranch, LLC v. United States</u>, 230 F.3d 1176, 1177 n.2 (10th Cir. 2000) (applying Fed. R. App. P. 10(e)); <u>United States v. Kennedy</u>, 225 F.3d 1187, 1191 (10th Cir. 2000) (same). Nevertheless, this court does have "an inherent equitable power to supplement the record on appeal" with matters that were not before the district court. <u>Kennedy</u>, 225 F.3d at 1191-92; <u>see also</u> <u>Hammon v. Ward</u>, 466 F.3d 919, 931 n.12 (10th Cir. 2006). Under the circumstances of this case, we exercise that authority and permit the Government to supplement the appellate record with this letter. <u>See</u> <u>Lile v. McKune</u>, 242 F.3d 389 (Table), 2000 WL 1786357, at \*\*1 n.2 (10th Cir. Dec. 6, 2000) (unpublished) (exercising inherent authority to supplement appellate record with materials that were not before the district court).

The prosecutor's letter, written after his misstatement at the pretrial hearing, clearly informs defense counsel that Balderama-Iribe faced a mandatory life sentence if convicted on the first count. This letter, therefore, clarified any misunderstanding caused by the prosecutor's earlier misstatement. Further, there was no reason for the Government to have included this letter in the record before the district court because Balderama-Iribe never objected in the district court to the mandatory life sentence imposed after the prosecutor's misstatement. Moreover, in order to succeed on appeal under the plain-error standard, <u>see</u> <u>infra</u> Section II, Balderama-Iribe must convince us that his mandatory life "sentence implicates the kind of fundamental fairness issues necessary to satisfy the fourth plain-error prong." <u>United States v. Sierra-Castillo</u>, 405 F.3d 932, 942 (10th Cir. 2005). In light of that, Balderama-Iribe cannot complain if this court goes beyond the district court record in these circumstances to determine whether the imposition of a mandatory life sentence was, in fact, unfair.

elected to go to trial, where a jury convicted him on all three counts.

In preparation for sentencing, a probation officer prepared a presentence report ("PSR") which indicated that Balderama-Iribe was subject to a statutory mandatory minimum life sentence, with no supervised release, on count one.[5] On November 15, 2004, prior to sentencing, the Government explicitly reiterated in writing that Balderama-Iribe's sentence pursuant to the Government's notice under 21 U.S.C. § 851 was a mandatory life sentence. In the "Government's Position with Respect to Sentencing Factors," filed with the court and served on defendant's counsel, the Government said

> the [PSR] makes reference to a statutorily required minimum sentence, but does not elaborate on that reference. The government would refer the Court to 21 U.S.C. § 841(b)(1)(A) which provides for a mandatory life sentence if the defendant has previously been convicted of two drug felonies. The government filed notice regarding application of that statutory provision pursuant to 21 U.S.C. § 851, relying on drug felony incidents which occurred on March 25, 1991, and November 7, 1995.
>
> Based on defendant's two prior drug felony convictions and the government's notice regarding those convictions under 21 U.S.C. § 851, it is the government's position that the mandatory sentence in this matter, as referred to in [the PSR], is life in prison.

Balderama-Iribe did not object to the mandatory life sentence, either before or during sentencing. Acknowledging that such a sentence was mandatory, the

---

[5]On appeal, Balderama-Iribe asserts that, while the PSR indicated that the maximum sentence he faced was life imprisonment, the PSR never stated that this life sentence was mandatory. In fact, the PSR did both. On its first page, the PSR indicated that life imprisonment was the maximum sentence available on count one and then later on that same page the PSR stated that life imprisonment was the "mandatory minimum" sentence available on that same count.

6

district court imposed a life sentence on count one.

## II. STANDARD OF REVIEW

Because Balderama-Iribe did not object in the district court to the mandatory life sentence, this court reviews that sentence for plain error. See Fed. R. Crim. P. 52(b) ("A plain error that affects substantial rights may be considered even though it was not brought to the court's attention."). Balderama-Iribe concedes this is the proper review standard. Under plain-error review,

> before an appellate court can correct an error not raised at trial, there must be (1) error, (2) that is plain, and (3) that affects substantial rights. If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings.

United States v. Cotton, 535 U.S. 625, 631 (2002) (quotations, citations, alterations omitted). Balderama-Iribe bears the burden of establishing that there was plain error warranting relief. See United States v. Bruce, 458 F.3d 1157, 1165 (10th Cir. 2006), cert. denied, 127 S. Ct. 999 (2007); United States v. Harlow, 444 F.3d 1255, 1261 (10th Cir. 2006).

## III. ANALYSIS

Beginning with the first plain-error inquiry, we conclude there was no error in this case. 21 U.S.C. § 851(a)(1) provides, in pertinent part:

> No person who stands convicted of an offense under this part shall be sentenced to increased punishment by reason of one or more prior

convictions, unless before trial, or before entry of a plea of guilty, the United States attorney files an information with the court (and serves a copy of such information on the person or counsel for the person) stating in writing the previous convictions to be relied upon.

A district court cannot impose an enhanced sentence unless the Government complies with § 851(a)'s requirements. See United States v. LaBonte, 520 U.S. 751, 754 n.1, 759-60 (1997).[6] Balderama-Iribe concedes that the information the Government filed in this case met § 851(a)(1)'s requirements. Generally once § 851 notice is given, that is sufficient to satisfy the statute. Cf. United States v. Willis, 102 F.3d 1078, 1085 (10th Cir. 1996) (applying 18 U.S.C. § 3559, which incorporates 21 U.S.C. § 851(a), and noting Government did not have to refile § 851 notice after Government filed a superseding indictment or after remand for retrial, citing cases). And there is nothing in the record to suggest that the prosecutor, during the pretrial hearing, was in any way trying to withdraw the earlier § 851 information. Under these circumstances, the prosecutor's single, brief misstatement made during the pretrial hearing was not enough to undo the clear notice provided by the earlier § 851 information. Balderama-Iribe candidly admits he has no case law to the contrary.

Even if we could say this was plain error, however, and even if this plain

_____

[6]At the time of Balderama-Iribe's sentencing and during the time that briefing took place in this appeal, this court treated compliance with § 851(a)(1) to be jurisdictional. See United States v. Flowers, 464 F.3d 1127, 1130 & n.1 (10th Cir. 2006). But we have since held that § 851(a)(1)'s requirements are not jurisdictional. See Flowers, 464 F.3d at 1129-30. To the extent that Balderama-Iribe's arguments on appeal treat the § 851 information as jurisdictional, therefore, they are no longer availing.

8

error affected Balderama-Iribe's substantial rights, the fourth plain-error inquiry requires us to consider whether we should exercise our discretion to grant relief. See Cotton, 535 U.S. at 631. We can do so only if the error seriously affected the fairness, integrity, or public reputation of judicial proceedings. See id. That was not the case here.

The purpose of a § 851 information is to "notify the defendant of the government's intention to use a prior offense to enhance his sentence," United States v. Vaughn, 370 F.3d 1049, 1055 (10th Cir. 2004), and to "give the defendant an opportunity to establish either that he had not been convicted of the crimes the government relies upon for the sentence enhancement or that the convictions do not qualify as the type satisfying the enhancement requirements," Willis, 102 F.3d at 1085; see also 21 U.S.C. § 851(b), (c) (providing procedures whereby a defendant can challenge a prior conviction on which Government seeks to enhance a sentence). Additionally, § 851 notice enables the defendant to make an informed choice about whether to plead guilty or go to trial. See United States v. Thompson, 473 F.3d 1137, 1145 (11th Cir. 2006), cert. denied, 127 S. Ct. 2155 (2007). All these purposes were served in Balderama-Iribe's case.

Balderama-Iribe has never challenged the existence of his two prior felony drug convictions nor their application under 21 U.S.C. § 841(b)(1)(A). Cf. United States v. Lopez-Gutierrez, 83 F.3d 1235, 1246-47 (10th Cir. 1996) (concluding trial court's failure to comply with § 851(b), requiring sentencing

9

court to inquire at sentencing whether defendant affirmed or denied his prior convictions, was harmless error where defendant did not assert that he would have challenged those prior convictions had trial court asked and where defense attorney conceded validity of the prior convictions).

Further, the § 851 information gave Balderama-Iribe clear notice that he faced a mandatory life sentence if convicted on count one. He concedes this. Balderama-Iribe was thus well aware that he faced a mandatory life sentence at the time he rejected the government's plea offer during the pretrial hearing, before the prosecutor's misstatement.

After Balderama-Iribe rejected the Government's plea offer, the prosecutor did make that single, brief misstatement, indicating Balderama-Iribe faced a statutory minimum twenty-year sentence instead of a mandatory life sentence. But there is simply no indication in the record that this misstatement in any way misled Balderama-Iribe into believing he was not facing a mandatory life sentence. Immediately after the prosecutor's misstatement, defense counsel informed the court that defense counsel had

> gone over all of the enhancements and the career offender provisions with [Balderama-Iribe] when we were first negotiating this plea agreement, and at that time it was my understanding that he would enter into the plea agreement, given the situation. At this time he has decided not to do that and to go forward with the trial. I believe he is fully aware of those consequences.

(Emphasis added.)

10

Even if the prosecutor's misstatement misled Balderama-Iribe, it would have only done so to the mandatory minimum nature of the life sentence he faced. Even the misstatement clearly indicated that Balderama-Iribe faced a maximum life sentence.

Moreover, any confusion that might have been created as to the mandatory minimum nature of that life sentence was dispelled by the prosecutor's letter explicitly stating that Balderama-Iribe faced a mandatory life sentence if convicted on count one. The prosecutor sent this letter during the additional thirty-day period the district court gave Balderama-Iribe to consider the Government's plea agreement further.

That Balderama-Iribe knew that he faced a mandatory life sentence if convicted on count one is bolstered by the fact that he never objected or otherwise expressed surprise when the PSR and then the Government's presentencing statement indicated he was subject to a mandatory life sentence. Nor did Balderama-Iribe protest during the sentencing proceeding when the district court imposed such a sentence. Under these circumstances, there is no indication that the prosecutor's single, brief misstatement during the pretrial hearing misled Balderama-Iribe into believing he was not subject to a mandatory life sentence.

Because the § 851 information in this case served the purposes it was intended to serve, despite the prosecutor's brief misstatement, Balderama-Iribe has failed to show that the mandatory life sentence the district court imposed

11

affected the fairness, integrity, or public reputation of these judicial proceedings, see <u>Cotton</u>, 535 U.S. at 631.

## IV. CONCLUSION

We, therefore, AFFIRM Balderama-Iribe's mandatory life sentence.